IN THE MATTER OF THE ADOPTION OF J.M.B.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF THE ADOPTION OF J.M.B.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF THE ADOPTION OF J.M.B.
2018 OK CIV APP 47
Case Number: 116186
Decided: 02/08/2018
Mandate Issued: 06/13/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 47, __ P.3d __

 

IN THE MATTER OF THE ADOPTION OF J.M.B., a minor child,

AVERY BUYCKES, Appellant,
v.
MICHAEL WHITE and PHYLLIS WHITE, Appellees.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE KURT G. GLASSCO, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Jessika Tate, Gilbert J. Pilkington, Jr., Tulsa, Oklahoma, for Appellant

Catherine Z. Welsh, Jim C. McGough, Matthew J. Hall, Mark A. Zannotti, Brian D. Carter, WELSH & MCGOUGH, PLLC, Tulsa, Oklahoma, for Appellees

Angela N. Monroe, ASSISTANT PUBLIC DEFENDER, OFFICE OF THE PUBLIC DEFENDER, Tulsa, Oklahoma, for Minor Child

KEITH RAPP, JUDGE:

¶1 The trial court respondent, Avery Buyckes (Buyckes), appeals a Judgment determining that he has no standing to object to the adoption of JMB by the maternal grandparents, Michael and Phyllis White (Grandparents). JMB is represented by counsel in these proceedings.

BACKGROUND

¶2 JMB was born on February 9, 2013. JMB's mother, Cokesha D. Phillips (Mother) is deceased and her date of death is September 16, 2016. At the time of her death she was married to Timothy D. Phillips (Presumed Father). They were lawfully married on September 22, 2000,[1] and remained married until Mother's death.[2] JMB's birth certificate lists Presumed Father as Father.[3]

¶3 Grandparents filed a petition to adopt JMB. Presumed Father previously consented to Grandparents' custody in a sworn document where he listed himself as "father."[4] He does not object to the adoption.

¶4 In their petition, Grandparents allege that Buyckes may claim to be the natural father of JMB. The petition states that Buyckes filed a paternity action in Tulsa County District Court, and might claim an interest in the adoption proceeding. Grandparents asserted that Buyckes had not been adjudicated as the natural father, so he had no standing. Alternatively, Grandparents moved for an order allowing the adoption without his consent because he has not provided support for JMB or maintained a positive relationship with JMB. Counsel for JMB also filed a challenge to Buyckes' standing.

¶5 The court in Buyckes' paternity case entered an "Interim Temporary Order" which ordered that he pay child support and an arrearage for child support and provided for supervised visitation.[5] Buyckes relies on this interim support order as one basis for finding that he is the natural father of JMB and argues that it refers to him as "father" of JMB. However, the paternity action never became final with an adjudication of parentage and was still pending when the present case was heard.[6] Buyckes testified that he did not have the money to continue the case.

¶6 In addition to the support order, Buyckes relies on a DNA test showing that he was not excluded as father and that the test shows a relationship between Buyckes and JMB to have a 99.99% probability.[7] He also points out that JMB has Buyckes as his last name. At the hearing on the standing motion, Buyckes submitted into evidence a Department of Human Services form, "Acknowledgment of Paternity" which he and Mother signed.[8]

¶7 Buyckes filed a handwritten objection to the adoption where he asserted his claim of being the natural father.[9] Grandparents and counsel for JMB challenged his standing.

¶8 After a hearing where evidence of the foregoing facts was presented, the trial court determined that Buyckes did not have standing and his objection to the adoption was therefore moot. In addition, the trial court ruled that: (1) Paternity was not decided; (2) The DHS child support order did not determine that Buyckes was the father; (3) Buyckes' "paternity case was moot because the mother had passed away and him being determined the father could only be by agreement;" and, (4) "Natural father was permitted to file an application on paternity and submit authority."[10] Buyckes appeals.

STANDARD OF REVIEW

Standing, as a jurisdictional question, may be correctly raised at any level of the judicial process or by the Court on its own motion. This Court has consistently held that standing to raise issues in a proceeding must be predicated on interest that is "direct, immediate and substantial." Standing determines whether the person is the proper party to request adjudication of a certain issue and does not decide the issue itself. The key element is whether the party whose standing is challenged has sufficient interest or stake in the outcome.

In re Estate of Doan, 1986 OK 15, ¶ 7, 727 P.2d 574, 576.

¶9 Standing presents a jurisdictional issue. Bank of America, NA v. Kabba, 2012 OK 23, ¶ 4, 276 P.3d 1006, 1008. Jurisdictional questions are reviewed de novo. Jackson v. Jackson, 2002 OK 25, ¶ 2, 45 P.3d 418, 421-22. Under this standard, the appellate court has "plenary, independent and non-deferential" authority to examine a trial court's legal rulings. Id.

ANALYSIS AND REVIEW

¶10 The trial court correctly concluded that there has not been a judicial determination of paternity in Buyckes' paternity case. The Record shows only that an interim temporary support order plus visitation has been entered. Likewise, the trial court correctly determined that an adoption case is not the forum for determining paternity.

¶11 The result is that the adoption record now shows that there is an individual who has evidence of being the natural father of the child to be adopted. However, that individual has been found to lack standing in the adoption proceedings because he has not shown that he achieved paternity status in the legal sense.

¶12 Thus, there is a difference between the status of being a biological father and the status of being a father in the legal sense. The law has nothing to do with the former. However, situations arise where it is necessary for the law to define the status of fatherhood in a legal sense. The Uniform Parentage Act provides for establishing the mother-father-child relationship in a legal sense. 10 O.S.2011, § 7700-201.[11]

¶13 The consequences from the record are twofold. First, the facts show that an individual has evidence of being the biological father but has not been allowed to pursue his rights in an adoption proceeding. The second, is that the adoption proceeding is clouded with the uncertainty that a critical process of adjudication of fatherhood in a legal sense and addressing that status accordingly in the adoption proceedings has been left out. That is not in the best interests of the child or the adopting parents.

¶14 The solution is to join the paternity case under the Uniform Parentage Act and the adoption case. The statute permits this to be done. 10 O.S.2011, § 7700-610(A); see 12 O.S.2011, § 2018.[12] Moreover, Mother's death does not preclude proceeding with the paternity case.[13] Thus, absence of jurisdiction of one party does not prevent an adjudication of parenthood as to the other party. 10 O.S.2011, § 7700-604(C). Moreover, the statute makes a mother a permissive, not mandatory party. 10 O.S.2011, § 7700-603.[14] The abatement statutes do not call for abatement of a paternity action brought by a putative father. 12 O.S.2011, §§ 1051-1052.

¶15 The trial court may then bifurcate the proceedings and determine paternity. Thereafter, depending on the outcome, the matter can proceed to determine whether consent to adoption is necessary on other grounds. Therefore, this Court rules that the trial court erred by not consolidating the Buyckes paternity action and the adoption case, separately determining paternity, and then proceeding accordingly with the adoption case.

CONCLUSION

¶16 This is a case where Grandparents wish to adopt the son of their deceased daughter. The child's mother was married well before and after the child's birth, so her husband is, by statute a "Presumed Father." He does not object to the adoption.

¶17 However, another person, Buyckes, claims to be the natural father and he objects to the adoption. Buyckes filed a timely paternity action, which was pending when the adoption case was filed. In the paternity case, the court entered an interim child support order directing Buyckes to pay child support. In addition, he has a genetic test indicating that he is the natural father. The child carries his last name and he has a DHS Form signed by him and the child's mother attesting to his paternity. The birth certificate shows Presumed Father as the father.

¶18 Grandparents and the child challenge Buyckes standing. The trial court correctly ruled that the paternity case temporary child support order is not an adjudication of parenthood.

¶19 However, the trial court erred by dismissing Buyckes' objection for lack of standing. Instead, the trial court should have consolidated the paternity case and the adoption case and bifurcated the paternity case for trial. Then, depending on the outcome, Buyckes might be found to lack standing or his standing might be confirmed. In the latter case, the matter can then proceed to ascertain whether his consent is not needed for other reasons.

¶20 Therefore, the judgment of the trial court is reversed and the cause is remanded for further proceedings in accord with this Opinion.

¶21 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BARNES, P.J., and GOODMAN, J., concur.

FOOTNOTES

[1] Marriage Certificate, Record, p. 57.

[2] Thus, Timothy D. Phillips' status as of the time this case was filed is that of "Presumed Father" pursuant to statute. 10 O.S.2011, § 7700-102(16); 10 O.S.2011, § 7700-294.

[3] Record, p. 59.

[4] Petitioners' Ex. 4.

[5] Respondent's Ex. 2. The Uniform Parentage Act requires entry of a support order when a party has petitioned to be determined the father. 10 O.S.2011, § 7700-624.

[6] Buyckes filed the paternity action within two years of the birth of JMB. The trial court took judicial notice of the entire proceedings as case FP 12-398. Respondent's Ex. 4 is the DHS record of Buyckes' support payments. It shows that not all payments have been made. Buyckes testified that he has made additional payments not reflected on the payment record. Tr., p. 41.

[7] See 10 O.S.2011, § 7700-621, as amended, for rules regarding admissibility of genetic testing.

[8] Respondent's Ex. 1. Admitted into evidence, Tr. p. 37. The signature dates are dim, but appear to be February 10, 2013, the day after JMB's birth, and that is Buyckes' testimony. Tr., p. 40. The document is filed stamped by DHS on June 14, 2013. The difference between the filed date and the execution date is not explained. The DHS Form asks whether Mother was married to another at the time of birth, and "yes" is checked and Presumed Father's name is inserted. The Form directs the signatories to have this person complete an additional Form and attach that additional Form. This additional Form is not attached. The Transcript refers to Respondent's Ex. 3 (same as Petitioners' Ex. 6) as a DHS Form "Denial of Paternity" but this document was not admitted into evidence. Tr. p. 38. The document is not included in the Exhibits package in the appellate Record. Buyckes maintained that Presumed Father signed this document. A presumed father can sign a denial of paternity which is valid when it conforms to the statute. 10 O.S.2011, § 7700-303.

[9] Record, p. 51.

[10] This last ruling occurred after discussions about the perceived inability of Buyckes to proceed in the paternity case because of the pending adoption case taking precedence. Buyckes' counsel asked the trial judge to take up the paternity issue notwithstanding the trial court's ruling that paternity was not an issue in the adoption. The trial court stated that Buyckes could file an application for consideration. Tr., pp. 57-58.

[11] For fathers, the statute provides in Section 7700-201(B):

Establishment of Mother-Child and Father-Child Relationships

. . . .

B. The father-child relationship is established between a man and a child by:

1. An unrebutted presumption of the man's paternity of the child under Section 8 of the Uniform Parentage Act;

2. An effective acknowledgment of paternity by the man under Article 3 of the Uniform Parentage Act, unless the acknowledgment has been timely rescinded or successfully challenged;

3. An adjudication of the man's paternity;

4. Adoption of the child by the man; or

5. As otherwise provided by law.

[12] Section 7700-610(A) provides:

Joinder of Proceedings

A. Except as otherwise provided in subsection B of this section, a proceeding to adjudicate parentage may be joined with a proceeding for adoption, termination of parental rights, child custody or visitation, child support, dissolution of marriage, annulment, legal separation, probate or administration of an estate, or other appropriate proceeding. (Emphasis added.)

[13] See In re Estate of Poole, 799 N.E.2d 250 (Ill. 2003)(Uniform Parentage Act permits man to bring paternity action even though child is deceased).

[14] Section 7700-603 reads:

The following individuals may be joined as parties in a proceeding to adjudicate parentage:

1. The mother of the child; and

2. A man whose paternity of the child is to be adjudicated. (Emphasis added.)






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2002 OK 25, 45 P.3d 418, JACKSON v. JACKSON
Discussed
 2012 OK 23, 276 P.3d 1006, BANK OF AMERICA, NA v. KABBA
Discussed
 1986 OK 15, 727 P.2d 574, 57 OBJ 993, Estate of Doan, Matter of
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 7700-102, Definitions
Cited
 10 O.S. 7700-201, Establishment of Mother-Child and Father-Child Relationships
Cited
 10 O.S. 7700-303, Signed Denial of Paternity - Validity
Cited
 10 O.S. 7700-603, Who May Be Joined
Cited
 10 O.S. 7700-604, Personal Jurisdiction
Cited
 10 O.S. 7700-610, Joinder of Proceedings
Cited
 10 O.S. 7700-621, Admissibility of Records - Genetic Testing Experts - Admissibility of Results of Genetic Testing and Copies of Bills
Cited
 10 O.S. 7700-624, Temporary Order for Support - Custody and Visitation
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2018, Joinder of Claims and Remedies
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA